UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYMOND SPENCER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KING COUNTY,<br><br>Defendant. | Case No. 2:25-cv-00204-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS |
| WAVERLY HILLS CLUB<br><br>INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY,<br><br>Defendant. | |

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 1

KING COUNTY,

               Counter-Plaintiff,

     v.

RAYMOND SPENCER, et al.,

               Counter-Defendants.

KING COUNTY,

               Counter-Plaintiff,

     v.

WAVERLY HILLS CLUB,

INCORPORATED,

               Counter-Defendant.

## I.    INTRODUCTION

Plaintiffs Raymond and Lael Spencer and Defendant King County dispute ownership over a strip of land located along the East Lake Sammamish Trail ("ELST"). King County now moves for summary judgment on both the Spencers' claims and its own counterclaims. Dkt. 19. For the reasons explained below, the Court concludes that King County owns the disputed land in fee simple, and it is entitled to summary judgment on all claims except for: (1) the Spencers' claims under the Fourteenth Amendment and 42 U.S.C. § 1983, which are not barred by the statute of limitations and have not been adequately briefed on the merits; and (2) King County's counterclaim for trespass and waste in the disputed strip, which remains the subject of genuine

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 2

disputes of material fact. The Court therefore GRANTS IN PART and DENIES IN PART the motion for summary judgment.

## II.    BACKGROUND

### A.    Facts

This case centers on a strip of land (the "right of way" or "ROW") that was formerly part of a railway line running alongside Lake Sammamish in Sammamish, Washington. *See* Dkts. 20-2, 20-19, 20-21. In 1887, private landowners Jim and Alice Yonderpump conveyed an interest in the ROW to the Seattle, Lake Shore and Eastern Railway Company ("SLS&E") via a right of way deed. Dkt. 20-2. Through subsequent conveyances, the Spencers now possess a portion of the Yonderpumps' land adjacent to the ROW, and King County now possesses SLS&E's interest in the ROW. The parties dispute whether the Yonderpump deed conveyed an easement or a fee interest. Dkt. 24 ¶ 11; Dkt. 19 at 20–25. If the former, then the Spencers now own the ROW subject to King County's easement; if the latter, then King County now owns the ROW in fee.

### 1.    *Yonderpump deed and subsequent conveyances*

In 1884, homesteader Jim Yonderpump obtained title to a tract of land (the "Yonderpump lot"), which included the land now constituting the ROW and the land now owned by the Spencers. Dkts. 20-1, 20-25. In May 1887, the Yonderpumps executed a deed granting SLS&E an interest in the ROW. Dkt. 20-2. The granting clause of the deed read as follows:

> In Consideration of the benefits and advantages to accrue to us from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King, in Washington Territory we do hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through our lands in said County.

*Id.* at 2. The deed described the conveyance as "[s]uch right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of [SLS&E]." *Id.* It concluded with a habendum clause: "To Have and to Hold the said

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 3

premises, with the appurtenances, unto the said party of the second part, and to its successors and assigns forever." *Id.*

Over the next century, portions of the Yonderpump lot changed hands several times. Many of these deeds did not mention the ROW. *See* Dkts. 20-5, 20-7, 20-8, 20-10. Meanwhile, SLS&E was acquired by the Northern Pacific Railway Company, which later became part of the Burlington Northern & Santa Fe Railway Company ("BNSF"). *See Beres v. United States*, 104 Fed. Cl. 408, 416 (2012). In 1956, a deed conveying a portion of the Yonderpump lot to the Spencers' direct predecessor-in-interest mentioned "Norther[n] Pacific Railway Right of way" when describing the boundary lines of the conveyance. Dkt. 20-16. It also mentioned a separate roadway easement. *Id.*

In April 1997, BNSF conveyed its interest in the ROW to The Land Conservancy of Seattle and King County by quit claim deed. Dkt. 20-19. Then, on September 16, 1998, the Surface Transportation Board—the federal agency that regulates railways—authorized the issuance of a notice of interim trail use ("NITU") allowing BNSF to abandon its rail line along Lake Sammamish and permitting the construction of an interim public trail. *The Burlington N. & Santa Fe Ry. Co.-Abandonment Exemption-in King Cnty.*, No. AB-6 (SUB 380X), 1998 WL 638432 (Sept. 16, 1998). Two days later, the NITU was issued, and The Land Conservancy conveyed its interest in the ROW to King County by quit claim deed. Dkt. 20-20; *see Beres*, 104 Fed. Cl. at 416. Over the next 25 years, King County constructed the ELST. Dkt. 20-21 at 2.

### 2.    The Spencers' activities in the ROW

In July 1992, the Spencers obtained title to a portion of the Yonderpump lot via a statutory warranty deed. Dkt. 20-17. The deed provided that it was subject to a "[r]ailroad right of way" and "[e]asements under recording numbers 2628804 and 4712061." *Id.* at 2. The

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 4

property description in the deed referenced the "Northern Pacific Railway right-of-way" when describing the property boundaries. *Id.* at 3.

At the time of purchase, the Spencers believed that their land included the ROW and that BNSF's interest in the ROW was only an easement. Dkt. 29 ¶¶ 2–3. Consistent with that understanding, the Spencers constructed a garden bed bordered by concrete blocks inside the ROW. *Id.* ¶¶ 3, 5. But beginning in July 2000, King County contacted the Spencers and informed them of its position that it owned the ROW in fee. Dkts. 20-26, 20-27, 20-28; Dkt. 29 ¶¶ 6–10. King County representatives told the Spencers that their use of ROW land was unauthorized. Dkt. 20-28 at 3. In December 2002, in an attempt to ensure that they owned the ROW in fee, the Spencers obtained a quit claim deed from Agnes Moe—another successor-in-interest to the Yonderpumps—conveying her interest in the ROW. Dkt. 20-18; Dkt. 29 ¶¶ 11–12.

In 2003, the Spencers obtained a 10-year special use permit ("SUP") from King County allowing them to maintain a garden in the ROW. Dkts. 20-29, 20-30, 20-31; Dkt. 29 ¶ 12. In their SUP application, the Spencers maintained their position that they owned the ROW in fee. Dkt. 20-30 at 3. After the SUP expired in 2013, the Spencers did not renew it, and they continued to maintain their garden after the SUP had lapsed. *See* Dkt. 29 ¶¶ 13, 16, 32–33.

In 2004, the Spencers sued the United States in the Court of Federal Claims, alleging that the 1998 NITU was a taking of their property without just compensation. *Beres v. United States*, 143 Fed. Cl. 27, 35 (2019); Dkt. 20-22 at 2. During this litigation, the Court of Federal Claims determined that the Yonderpumps had conveyed only an easement to SLS&E, rather than conveying the ROW in fee simple. *Beres v. United States*, 97 Fed. Cl. 757, 809 (2011). This lawsuit resulted in a settlement agreement under which the United States agreed to compensate the Spencers. Dkt. 20-22 at 2, 4.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 5

Over the following years, communications between the Spencers and King County continued. In November 2019, the Spencers sent a letter to King County requesting "assurances from the City and County regarding the final permitted trail design and the immediate return of several areas near Mr. Spencer's property to their pre-construction conditions." Dkt. 20-32 at 3. They expressed an intent to sue King County if those requests were not met. *Id.* The Spencers reiterated their concerns in a response the next month. Dkt. 20-35.

In January 2020, King County sent a letter to the Spencers informing them that any landscaping and structures impeding construction of the ELST would need to be removed from the ROW by September of that year, either by the Spencers themselves or by King County. Dkt. 20-34. Between 2021 and 2024, the Spencers and the County continued to communicate about the Spencers' unauthorized activities in the ROW. Dkts. 20-36, 20-37, 20-38, 20-39, 20-41. On September 17, 2024, a King County employee sent Mr. Spencer an email notifying him that he would need to obtain an SUP to continue maintaining structures in the ROW. Dkt. 20-41. A few weeks later, King County sent the Spencers a cease-and-desist letter seeking reimbursement related to the removal and damage of county property. Dkt. 20-42. The letter stated that King County would sue the Spencers if they failed to agree to a settlement of King County's claims against them. *Id.* at 3. On November 6, 2024, King County sent a follow-up letter to the Spencers' attorney. Dkt. 20-43.

3.     *Settlement agreement between Sammamish Homeowners and King County*

Sammamish Homeowners ("SHO") is a nonprofit corporation that advocates for property owners in the City of Sammamish and along the ELST. Dkt. 20-24 at 2. The Spencers have been members of Sammamish Homeowners, and Mr. Spencer "was familiar with their activities and interest regarding the trail and spring lake flooding." Dkt. 29 ¶ 14.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 6

In July 2012, King County applied for a permit to make improvements to a portion of the ELST. Dkt. 20-24 at 2. After the permit was conditionally approved by the city of Sammamish, two local homeowners and SHO challenged the application before the Shorelines Hearings Board. *Id.* These proceedings resulted in a settlement agreement between King County, the named homeowners, and SHO. *Id.* Under the settlement, King County agreed that property owners along the ELST would be permitted to "install landscaping improvements and vegetation within the County's right of way" subject to certain criteria. *Id.* at 3, 8. The agreement also provided that property owners who had already obtained an SUP would "not be required to obtain a new one for new landscaping improvements or vegetation necessitated or desired as a result of the County's forthcoming construction." *Id.* at 3. Enforcement of the agreement could be obtained by filing suit in King County Superior Court. *Id.* at 5–6.

The Spencers were not named in the agreement, and there is no evidence that they took part in the proceedings. *See id.* at 2. However, Mr. Spencer attests that he was aware of the negotiations between King County and SHO. Dkt. 29 ¶ 15.

## B. Procedural history

In January 2025, the Spencers sued King County over its use of the ROW. Dkt. 1. The Spencers allege that they own the ROW "subject to a trail easement owned by King County and a dormant railroad easement." Dkt. 24 ¶¶ 79–82. They claim that King County has violated (1) the Trails Act, 16 U.S.C. § 1247(d), by using the ROW in a manner unauthorized by that law, (2) the SHO settlement agreement, by threatening to sue the Spencers for their activities in the ROW, and (3) the Fourteenth Amendment, by treating the Spencers differently from other homeowners along the ELST. *Id.* ¶¶ 71–78, 83–112. Based on those allegations, the Spencers seek quiet title, declaratory relief, and damages under 42 U.S.C. § 1983. *Id.* at 25–26. King

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 7

County contends that it owns the ROW in fee, and it countersues for quiet title, trespass, and waste. Dkt. 15 at 28–30.

On June 18, 2025, King County moved for summary judgment on the Spencers' claims and King County's counterclaims against the Spencers. Dkt. 19. On July 9, the Spencers filed a response. Dkt. 27. King County filed a reply one week later. Dkt. 31. The motion is now ripe for the Court's review.

### III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1122 (9th Cir. 2024) (quoting *Anderson*, 477 U.S. at 256).

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Ev. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 8

personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan,* 497 U.S. at 888 (internal quotations omitted).

"In general, when construing a deed, the intent of the parties is of paramount importance and the court's duty to ascertain and enforce." *Brown v. State*, 130 Wn.2d 430, 437, 924 P.2d 908 (1996). Any "ambiguity in a deed is resolved against the grantor." *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253, 272, 126 P.3d 16 (2006).

## IV.    DISCUSSION

For the reasons explained below, King County owns the ROW in fee, and the Spencers therefore lack standing to bring claims related to King County's activities in the ROW. The Spencers' claim for declaratory relief under the SHO settlement agreement also fails as a matter of law, as this Court is not the proper forum to seek relief under that document. But the Spencers have presented sufficient evidence to overcome summary judgment on King County's argument that their Section 1983 claim is time-barred. Finally, King County is not entitled to summary judgment on its trespass and waste claims.

**A.    The Yonderpump deed conveyed a fee interest to SLS&E.**

The primary dispute in this case is whether the Yonderpump deed conveyed a fee interest or an easement to SLS&E. Decades of case law inform the Court's analysis of this question. The Court discusses each relevant decision in turn.

In *Brown v. State*, 130 Wn.2d 430, 924 P.2d 908 (1996), the Washington Supreme Court described factors that courts should consider in determining whether a railway deed conveys an easement or fee simple title:

> (1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.

*Id.* at 438. Other relevant considerations include "the circumstances surrounding the deed's execution and the subsequent conduct of the parties." *Id.*

The *Brown* court recognized that the term "right of way" in a railroad deed may evince an intent to convey an easement if there is a "specifically declared purpose that the grant was a right of way for railroad purposes" and "no persuasive evidence of intent to the contrary." *Id.* at 438–39. The court explained that "the use of the term 'right of way' as a limitation or to specify the purpose of the grant generally creates only an easement." *Id.* at 439. But "where there is no language in the deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, the deed will be construed to convey fee simple title." *Id.* at 439–40.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 10

In *King County v. Rasmussen*, 299 F.3d 1077 (9th Cir. 2002), the Ninth Circuit interpreted the "Hilchkanum deed," a deed from an area landowner to SLS&E that was identically worded to the Yonderpump deed. *Id.* at 1080. Relying on *Brown*, the court determined that the Hilchkanum deed conveyed land in fee simple. *Id.* at 1084–88. Specifically, the court determined that the use of the words "convey" and "strip" in the deed's granting clause, along with a metes-and-bounds description, indicated an intent to convey a fee interest. *Id.* at 1087. The court then considered subsequent deeds by the Hilchkanums, which "explicitly excepted the strip of land belonging to the Railway," and concluded that they were evidence that the original deed had conveyed a strip to SLS&E in fee simple. *Id.* But it also concluded that a failure to mention the strip in other subsequent deeds "is not significantly probative of whether or not the parties intended to convey a fee simple estate." *Id.* at 1087–88.

The Washington Court of Appeals interpreted the Hilchkanum deed two years later in *Ray v. King County*, 120 Wn. App. 564, 86 P.3d 183 (2004), and reached the same conclusion as the Ninth Circuit. After determining that the form of the deed and the use of the term "right of way" did not create any presumption of a fee title conveyance, the court considered the remaining *Brown* factors. *Id.* at 574–78. The court reasoned that the granting clause suggested a fee simple conveyance because it "grant[ed] a right of way to the Railway without expressly *restricting* how that right of way was to be used." *Id.* at 578–80. The court noted that the deed included a provision permitting SLS&E to cut trees as needed on adjacent property, and it determined that "[t]he lack of any limitation in the use of the strip starkly contrasts with the more limited right to cut trees only on the property adjacent to the strip." *Id.* at 581. Finally, the court rejected arguments that the deed should be construed against SLS&E based on allegations that the notary was an agent of SLS&E and undisputed evidence that the Hilchkanums could not read or write. *Id.* at 586–87.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 11

Next, in *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253, 126 P.3d 16 (2006), the Washington Supreme Court determined that a 1905 deed granting a right of way to BNSF's predecessor in interest conveyed only an easement. *Id.* at 262–71. The court clarified that *Brown* did not overrule prior cases that had concluded that the use of the term "right of way" created the presumption of an easement. *Id.* at 265–66. Instead, *Brown* had "distinguished them on the limited basis that none of the deeds at issue in *Brown* possessed language relating to the *purpose* of the grant or limiting the estate conveyed." *Id.* at 266. The court ultimately concluded that for the grant at issue, "the word 'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest." *Id.*

In *Beres v. United States*, 97 Fed. Cl. 757 (2011), the Court of Federal Claims became the first to interpret the Yonderpump deed itself, concluding that it conveyed only an easement. *Id.* at 809. Before reaching a decision, the court certified questions to the Washington Supreme Court regarding whether the use of the phrase "right of way" in several disputed deeds—including the Yonderpump and Hilchkanum deeds—indicated an easement or fee simple conveyance. *Id.* at 765. The Washington Supreme Court declined the certification request:

> The court is of the view that, in light of existing precedent such as *Brown v. State,* 130 Wash.2d 430, 924 P.2d 908 (1996) and *Ray v. King County,* 120 Wash.App. 564, 86 P.3d 183, *review denied,* 152 Wash.2d 1027, 101 P.3d 421 (2004), the questions posed by the federal court are not "question[s] of state law . . . which [have] not been clearly determined."

*Id.*

In its decision, the *Beres* court applied the *Brown* factors and disagreed with prior case law interpreting the Hilchkanum deed, reasoning that it likely had a more developed record before it. *Id.* at 786–92. But in its interpretation of the Yonderpump deed, the court found no probative external evidence of the parties' intent, concluding that subsequent conveyances by the

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 12

Yonderpumps that did not mention the ROW were not "helpful to explain the grantors' intent." *Id.* at 794.

Finally, in *Hornish v. King County*, 899 F.3d 680 (9th Cir. 2018), the Ninth Circuit revisited its analysis of the Hilchkanum deed and once again held that it conveyed a fee interest. *Id.* at 692–94. The court concluded that it was bound by *Rasmussen* and *Ray*, and that *Kershaw* did not change the analysis from those cases. *Id.* at 692–93. The court noted that in *Kershaw*, the Washington Supreme Court had "affirmed the correctness of *Ray*." *Id.* at 693. It also determined that the Washington Supreme Court's denial of the certification request from the Court of Federal Claims was "persuasive evidence" that *Ray* remained applicable. *Id.* at 693–94. Ultimately, the court held "that the 'right of way' language in the granting clause is not limiting, and does not give rise to the *Kershaw* easement presumption." *Id.* at 694.

Because the Yonderpump deed and the Hilchkanum deed are identically worded, *Hornish*, *Rasmussen*, and *Ray* control this Court's analysis of the deed's text. *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it."); *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002) (explaining that when considering state law issues, a federal court is bound by the decision of an intermediate state appellate court absent persuasive evidence that the state's highest court would reach a different decision). Therefore, the Court may only conclude that the Yonderpump deed conveyed an easement if "the circumstances surrounding the deed's execution and the subsequent conduct of the parties" can overcome the text of the deed, which weighs in favor of a fee simple conveyance. *See Brown*, 130 Wn.2d at 438. No such circumstances have been presented here.

The Spencers attempt to distinguish *Hornish*, *Rasmussen*, and *Ray* by supplying additional evidence regarding the Yonderpump deed, including (1) identical language in other

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 13

deeds conveying land to SLS&E on the same day, which they argue indicates that SLS&E drafted the deeds, Dkt. 27 at 24–25; (2) statements regarding Mr. Yonderpump's alleged illiteracy, *id.* at 25–26; and (3) subsequent conveyances by the Yonderpumps that did not mention the ROW, *id.* at 26–27. But none of this evidence "clearly indicate[s]" the intent to convey an easement. *See Rasmussen*, 299 F.3d at 1084. First, the Spencers' arguments about SLS&E's role in drafting the deeds and Mr. Yonderpump's illiteracy, even if true, would not necessarily show that the Yonderpumps did not understand the nature of the conveyance. *See Ray*, 120 Wn. App. at 586. The Spencers submit two affidavits stating that Mr. Yonderpump was "unable to read and write the English language." Dkts. 30-9, 30-10. Even assuming that these affidavits could be presented in an admissible form at trial, they do not state that Mr. Yonderpump could not communicate verbally in English. Second, as both the Ninth Circuit and the Court of Federal Claims recognized, the failure of subsequent conveyances to mention the ROW is not useful in ascertaining the parties' intent. *Beres*, 97 Fed. Cl. at 794; *see also Rasmussen*, 299 F.3d at 1087–88.

Based on the text and surrounding circumstances, the Court concludes that the Yonderpump deed conveyed the ROW to SLS&E in fee simple.[1] King County, as SLS&E's successor in interest, is entitled to quiet title in the disputed property. And because the Yonderpumps were predecessors in interest to both the Spencers and Agnes Moe, the 2002 quit claim deed did not convey any interest in the ROW.

---

[1] The parties dispute the applicability of (1) real estate contracts executed by the Yonderpumps' successors in interest and (2) King County tax records, both of which expressly exclude the ROW. *See* Dkt. 19 at 5–6, 18–19; Dkts. 20-9, 21-1, 21-2, 21-3, 21-4, 21-5; Dkt. 27 at 15–16; Dkt. 28 (declaration of title examination expert Dwight Bickel). These documents are not "subsequent conduct of the parties" to the original conveyance and thus have limited bearing on the intent of those parties. However, they do show that later landowners treated the Yonderpump deed as a fee title conveyance.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 14

**B.      The Spencers did not obtain title to the ROW by adverse possession.**

The Spencers next argue that even if the Yonderpump deed conveyed the ROW in fee, they have adversely possessed the ROW by building and using their garden in the ROW for over 30 years. Dkt. 27 at 30–32. King County responds that the Spencers have failed to meet the requirements for an adverse possession claim. Dkt. 31 at 3–4. The Court agrees with King County.

"In order to establish a claim of adverse possession, there must be possession that is: (1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile." *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). "Possession of the property with each of the necessary concurrent elements must exist for the statutorily prescribed period of 10 years." *Id.*; RCW 4.16.020(1).

Under RCW 7.28.090, a party may not bring an action for adverse possession of any "land[] held for any public purpose." Washington courts have therefore held that "adverse possession does not run against a governmental body holding land for public purposes." *Sisson v. Koelle*, 10 Wn. App. 746, 748, 520 P.2d 1380 (1974); *Neighbors v. King County*, 15 Wn. App. 2d 71, 74, 83, 479 P.3d 724 (2020) (analyzing the same railway corridor at issue here and concluding that "[t]he County is immune from adverse possession claims for its public lands under RCW 7.28.090"); *see also Town of W. Seattle v. W. Seattle Land & Improvement Co.*, 38 Wash. 359, 363, 80 P. 549 (1905) ("The general rule is that a party cannot acquire title by adverse possession to property held by a municipality in its governmental capacity for public purposes."). But if a party adversely possesses a property before a state or local government obtains record title, "the adverse possessor is automatically vested with title to the subject property," and "[t]he prior owner cannot extinguish this title by transferring record title to the government." *Gorman v. City of Woodinville*, 175 Wn.2d 68, 74–75, 283 P.3d 1082 (2012).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST
SPENCER PLAINTIFFS - 15

Here, the Spencers obtained title to their property on July 22, 1992. Dkt. 20-17 at 2. King County obtained title to the ROW on September 18, 1998, just over six years later. Dkt. 20-20 at 2–3. There is no evidence in the record as to exactly when the Spencers built their garden in the ROW, *see* Dkt. 29 ¶ 3, and the Spencers argue in their brief that they constructed the garden bed "in 1992 or 1993." Dkt. 27 at 31. Even assuming that the Spencers installed their garden bed the day they obtained title to their property, their "possession" of the ROW did not span for the statutorily mandated 10-year period before the land became publicly owned and dedicated to public use.[2] *See* Dkt. 20-26 (letter from King County employee to area residents describing its management of the ELST for public use).

Moreover, there is no evidence to suggest that the Spencers' use of the ROW has ever been "exclusive" for the purposes of adverse possession. *See Michel v. City of Seattle*, 19 Wn. App. 2d 783, 790–91, 498 P.3d 522 (2021) ("[T]he exclusivity element means that an adverse possessor may not share possession of the area claimed with the true owner and, though less critical, not too much with third persons who are there without the adverse possessor's consent." (alteration in original) (quoting 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.19, at 541 (2d ed. 2004))). Instead, Mr. Spencer's declaration, submitted alongside the Spencers' opposition brief, describes a train running weekly through the ROW "[f]or years." Dkt. 29 ¶ 4. Nor was their use seemingly "hostile" while the railroad company owned the land—Mr. Spencer's declaration also states that a railroad employee knew he planned to build the garden beds and told him "that as long as [he] was more than 11 feet from the nearest rail, it would not interfere with railroad use." *Id.* ¶ 3.

---

[2] Though neither party argues this, there is also authority suggesting that the Spencers could not adversely possess land owned by a railroad in fee. *Neighbors*, 15 Wn. App. 2d at 85 (holding that the Interstate Commerce Commission Termination Act "preempts operation of Washington adverse possession statutes against railroads").

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 16

C.    **The Spencers lack standing to bring claims for quiet title and declaratory relief against King County's interest in the ROW.**

King County argues that the Spencers lack standing for their declaratory relief and quiet title claims related to the ROW because they have no ownership interest or possessory rights in that piece of property. Dkt. 19 at 16–20; Dkt. 31 at 2–5. The Spencers respond that they have standing to pursue declaratory relief related to the ROW because they "*assert* a concrete interest" in the ROW, and their alleged injury is "fairly traceable" to King County. Dkt. 27 at 12–14. Similarly, they argue that they have standing to pursue their quiet title claim because they "have alleged ownership and a right to possess, subject to the County's trail easement." *Id.* at 15–16.

*Hornish* governs the Court's standing inquiry. In *Hornish*, the Ninth Circuit explained that a plaintiff who lacks any interest in a piece of property has no standing to challenge another party's interest in that property. *Hornish*, 899 F.3d at 691–92 (discussing a claim for declaratory relief). There, the plaintiffs-appellants sought a declaratory judgment against King County related to its use of a strip of land along Lake Sammamish. *Id.* at 686, 691. The court concluded that to demonstrate "standing to challenge King County's interest in the Corridor, Plaintiffs-Appellants must show that Defendants-Appellees' possession or use of the Corridor injured Plaintiffs-Appellants' interests therein." *Id.* at 692. Based on its conclusion that King County owned the disputed property in fee, the Ninth Circuit held that the plaintiffs-appellants had no property interests therein and thus lacked standing to pursue declaratory relief. *Id.* This logic from *Hornish* also applies to quiet title claims: under Washington statutory law, a person seeking quiet title must "hav[e] a valid subsisting interest in real property, and a right to the possession thereof." RCW 7.28.010; *see also Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 132 Wn. App. 188, 195, 130 P.3d 880 (2006) ("A party seeking to quiet title must succeed on the strength of its own title, and cannot prevail based on the weakness of the other party's title.").

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 17

Standing is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where standing depends on a showing of interest in a specific property, a party responding to a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial" as to the property interest. *Zellmer*, 104 F.4th at 1122. As explained above, King County has established that it is entitled to judgment as a matter of law regarding its ownership of the ROW. The Spencers have thus failed to set forth the "manner and degree of evidence" required to demonstrate standing for their claims related to the ROW at this stage of the litigation, even if their assertions of a property interest were sufficient at the pleading stage. Although the Court recognizes that framing this question as one of standing seems odd given its substantial overlap with the merits of the disputed ownership claims, that is the framing set out by the Ninth Circuit that this Court is bound to follow. Summary judgment is warranted on these claims.

### D. This is not the proper forum to seek relief under the SHO settlement agreement.

The Spencers seek the following declaratory relief under the SHO settlement agreement: (1) "[b]y threatening Plaintiffs with legal action for work done within the right of way which is permissible under King County's settlement with Sammamish Homeowners, King County is in violation of the Settlement Agreement"; (2) "Plaintiffs are members of Sammamish Homeowners and are entitled to the benefits of that Settlement Agreement"; (3) "[a]lternatively, Plaintiffs are third party beneficiaries of the Settlement Agreement which was intended to resolve uncertainties about what private property owners would be allowed to do on the right of

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 18

way adjacent to their property"; and (4) "King County has a duty imposed by the Settlement Agreement to accept work authorized under the Settlement Agreement." Dkt. 24 ¶¶ 84–87.

King County argues that the Spencers lack standing to enforce the SHO settlement agreement because "[a]lthough the Spencers claim to be members of SHO, they bring this action in their capacity as individuals." Dkt. 19 at 30–31. This argument is unpersuasive: the Spencers present undisputed evidence that they were members of the SHO at the time of the agreement and thus have an interest in its enforcement. Dkt. 29 ¶ 14; *see* Dkt. 20-24 at 2. However, this Court is not the proper forum for such an action.

Under Washington's Uniform Declaratory Judgment Act, a court may enter a declaratory judgment "in any proceeding . . . in which a judgment or decree will terminate the controversy or remove an uncertainty." RCW 7.24.050. The Washington Supreme Court "has limited the operation of the uniform declaratory judgment act to cases where there is no satisfactory remedy at law available." *Hawk v. Mayer*, 36 Wn. 2d 858, 866, 220 P.2d 885 (1950); *Grandmaster Sheng-Yen Lu v. King County*, 110 Wn. App. 92, 98–99, 38 P.3d 1040 (2002) ("One is not entitled to relief by way of a declaratory judgment if there is available a completely adequate alternative remedy.").

King County maintains that the Spencers' requests for declaratory relief related to the SHO settlement agreement are not proper because they are duplicative of their Section 1983 claim; there is an adequate remedy at law; and a declaratory judgment would not be proper under RCW 7.24.050. Dkt. 19 at 28–29; Dkt. 31 at 16–17. The Court agrees that the settlement agreement itself provides "a completely adequate alternative remedy." *Grandmaster*, 110 Wn. App. at 98–99. The agreement provides that it "may be enforced by filing an action in King County Superior Court," and that a party alleging breach "may seek specific performance and/or injunctive relief" and "recover its reasonable costs and attorney's fees." Dkt. 20-24 at 5. The

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 19

Spencers have not shown that this remedy is inadequate or unenforceable. They are therefore not able to obtain relief through Washington's declaratory judgment act, and King County is entitled to summary judgment on this claim.

> **E.    The Spencers have presented sufficient evidence of "discrete acts" occurring within the statute of limitations for the purposes of 42 U.S.C. § 1983.**

The Spencers' final claims seek relief under the Fourteenth Amendment and 42 U.S.C. § 1983, based on their allegation that King County treated the Spencers differently from similarly situated landowners along the ELST in its response to their activities in the ROW. Dkt. 24 ¶¶ 89–117.

In Washington, a Section 1983 action is subject to a three-year statute of limitations. *Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981); RCW 4.16.080(2). A Section 1983 claim "accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Hawkins v. City of Federal Way*, No. C26-5012-KKE, 2026 WL 689622, at *2 (W.D. Wash. Mar. 11, 2026) (quoting *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009)). A claim may be timely if the plaintiff has "alleged 'discrete acts' that would violate the Constitution that occurred within the limitations period." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). For discrete acts, as opposed to continuing violations, only those acts that fall within the statute of limitations are actionable as part of a Section 1983 claim. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) ("Discrete acts are not actionable if time barred, even if related to acts alleged in timely filed charges."); *see also Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746–48 (9th Cir. 2019) (discussing evolution of the continuing violation doctrine).

King County argues that the Spencers' Section 1983 claim is untimely because "the Spencers knew the basis for their constitutional claims as early as 2002, when their conflict with King County over their landscaping and other activities in the [ROW] began." Dkt. 19 at 32–33.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 20

The Spencers contend that the claim is not time-barred because at least some of King County's allegedly discriminatory actions took place after January 31, 2022, three years before the Spencers initiated this case. Dkt. 27 at 48–49.

The Court agrees that the Spencers have presented evidence of at least some discrete acts—threats of enforcement actions from King County to the Spencers regarding their activities in the ROW—that occurred after that date. *See* Dkts. 20-41, 20-42, 20-43. To the extent that the Spencers' Section 1983 claim relies on those acts, it is not time-barred, and summary judgment is not warranted on that basis. In making this determination, the Court does not reach the merits, which have not been adequately briefed at this stage. And having limited this claim to discrete acts that occurred after January 31, 2022, the Court does not reach King County's argument that the claim is barred by laches. *See* Dkt. 19 at 33–34; Dkt. 31 at 18–19.

**F.    King County is not entitled to summary judgment under RCW 4.24.630(1).**

Finally, King County seeks recovery for trespass and waste under RCW 4.24.630(1).[3] Per that statute,

> [e]very person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury.

Acting "wrongfully" means that "the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." *Id.*

King County argues that the Spencers violated RCW 4.24.630(1) by knowingly entering county land, removing or relocating county property, and replacing that property with their own structures. Dkt. 19 at 26–27. It contends that the Spencers knew that they were not permitted to

---

[3] To the extent that King County raises a common law trespass claim against the Spencers, that issue has not been adequately briefed.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 21

undertake those activities, based on the terms of their previous SUP. *Id.* The Spencers respond that they did not act "wrongfully" under the statute because they had been in a "good faith dispute over ownership." Dkt. 27 at 42–43.

Summary judgment is not appropriate on this claim because there is a genuine dispute of material fact as to whether the Spencers acted "wrongfully" as defined by the statute. The Spencers were aware of King County's position that their activities were unauthorized before and after the term of their SUP. But it may have been reasonable for them to believe that King County was incorrect about the nature of its interest in the ROW, as the only court to rule on the Yonderpump deed had concluded that it conveyed only an easement. *See Beres*, 97 Fed. Cl. at 809. And before their SUP expired, their garden had been "tolerated—indeed, even authorized—by [King County] and [the railroad] for numerous years." *King County v. Abernathy*, No. C20-0060-RAJ-SKV, 2021 WL 3472379, at *25 (W.D. Wash. July 26, 2021). The only action under the statute that does not require "wrongful" conduct is "remov[ing] timber, crops, minerals, or other similar valuable property from the land," and King County does not argue that the Spencers' removal of "bollards, boulders, habitat logs, and landscaping plants belonging to the County" equates to the removal of natural resources like timber or crops. Dkt. 19 at 26. Without undisputed proof of wrongful conduct, King County has not shown that it is entitled to judgment as a matter of law on its trespass and waste claims.

## V.   CONCLUSION

For the foregoing reasons, the Court ORDERS:

1.     Defendant King County's motion for summary judgment against the Spencer Plaintiffs (Dkt. 19) is GRANTED IN PART and DENIED IN PART.

2.     Quiet title is GRANTED to King County in the disputed property. King County owns the fee title to that portion of the ELST Corridor adjoining the Spencers'

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 22

property, located in Government Lot 2 of Section 32, Township 25N, Range 6 East, King County Tax Parcel No. 322506-9015.

3. To the extent additional proceedings are required on remedies for King County's quiet title claim, the parties shall meet and confer and file a joint status report no later than April 30, 2026 proposing a schedule for those proceedings.

4. The Spencers' first, second, and third claims for relief are DISMISSED without prejudice.

5. The Spencers' Section 1983 claim, and the County's counterclaims for trespass and waste, will proceed on the case schedule set forth at Dkt. 60.

Dated this 31st day of March, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AGAINST SPENCER PLAINTIFFS - 23